UNITED STATES of America, Plaintiff–Appellee,

v.

Gerald Lynn CAMPBELL, Defendant–Appellant.

No. 99–4539.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 2001.

Decided Aug. 1, 2001.

---

**ARGUED:** Margaret McLeod Cain, Charlottesville, VA, for Appellant. Ray B. Fitzgerald, Jr., Assistant United States Attorney, Charlottesville, VA, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Charlottesville, VA, for Appellee.

Before DIANA GRIBBON MOTZ and GREGORY, Circuit Judges, and FREDERIC N. SMALKIN, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded by published opinion. Judge MOTZ wrote the opinion, in which Judge GREGORY and Judge SMALKIN joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

This case turns on a question of first impression in this circuit, namely whether infliction of "bodily injury" and use of a deadly or dangerous weapon in 18 U.S.C. § 111(b) (1994) constitute offense elements. We hold that they do and, for the reasons that follow, reverse Gerald Lynn Campbell's sentence and remand for re-sentencing.

### I.

On October 11, 1998, federal marshals transported Campbell, a federal prisoner, from the Augusta Correctional Center in Staunton, Virginia to the Albemarle–Charlottesville Regional Jail where he was to be incarcerated until his transfer to another federal facility. That night, while being served dinner, Campbell forced his way out of his cell. Officer Shannon Button ordered Campbell to return to his cell, but he refused.

As Campbell advanced, Button attempted to protect herself by firing pepper spray at him, but her spray cannister failed to discharge. Campbell and Button then engaged in a scuffle during which Campbell removed the pepper spray from Button's grasp and tried to spray her, but again the spray cannister did not discharge. Campbell then hit Button, causing her glasses to break. A nearby correctional officer saw the altercation and called for help. When other correctional officers arrived on the scene to assist Button, Campbell attempted to avoid sub-

mission by holding Button as a shield. Campbell also tried to pepper spray the assisting officers; they responded by spraying Campbell with pepper spray and ultimately subdued him.

As a result of these events, a federal grand jury returned an indictment charging Campbell with assault on a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) and 111(b).[1] Specifically, the indictment charged:

> That on or about October 11, 1998 ... Gerald Lynn Campbell, did knowingly and forcibly and *by means of a dangerous weapon,* assault, oppose, impede, intimidate or interfere with Shannon Button, a correctional officer at the Charlottesville–Ablemarle Regional Jail, while Button was engaged in ... the performance of her official duties....

(Emphasis added). Although § 111(b) identifies infliction of "bodily injury," in addition to use of a dangerous weapon, as a possible aggravating factor, that factor was not mentioned in Campbell's indictment.

Campbell's trial began on March 25, 1999. During trial, the government argued that pepper spray was a dangerous weapon within the meaning of § 111(b). At the end of the trial, the district court instructed the jury that, with respect to the count of assault under 18 U.S.C. § 111, two verdicts were possible. According to the district court's instructions, the jury could either "find the defendant guilty or not guilty of the crime of assault *without* a deadly weapon, or [it could] indicate that [Campbell] used a deadly weapon if [it found] beyond a reasonable doubt that he did." (Emphasis added). The district court informed the jury that "for sentencing purposes, it's more serious if you use a deadly weapon." The verdict form permit-

ted the jury to indicate whether it found Campbell not guilty of assault, guilty of assault with a dangerous weapon, or guilty of assault without a dangerous weapon. At the conclusion of the trial, the jury found Campbell guilty of assault, but not guilty of assault with a dangerous weapon. On the verdict form, the jury expressly indicated its finding that Campbell had *not* used a dangerous weapon in committing the assault on Button.

Prior to sentencing, on April 5, 1999, the government filed a notice of enhanced penalty pursuant to 18 U.S.C. § 3559(c)(4) (1994), informing Campbell of its intent to pursue a penalty of life imprisonment. The notice asserted that Campbell's § 111 conviction constituted a "serious violent felony" and listed several of Campbell's prior convictions, which the government claimed amounted to first and second "strikes" pursuant to § 3559.

Campbell's sentencing hearing took place on June 29, 1999. At the hearing, Campbell's counsel and the prosecutor hotly debated whether, in light of the jury's finding that Campbell did not use a dangerous weapon, Campbell was eligible for the maximum ten-year sentence authorized by § 111(b) for assaults involving bodily injury or use of a dangerous weapon. The district court determined that infliction of bodily injury and use of a dangerous weapon within the meaning of § 111(b) were sentencing factors, not elements of a separate crime that needed to be charged in the indictment.

Based on the trial testimony, as well as additional testimony from Button as to the extent of her injuries, the district court found that (i) Campbell did not use a dangerous weapon, (ii) Campbell's assault inflicted bodily injury on Button, thereby

---

1. The grand jury also charged Campbell with abduction, in violation of 18 U.S.C. § 1201 (1994), but the jury acquitted Campbell of that crime.

making Campbell eligible for up to ten years imprisonment under § 111(b), but (iii) Campbell's assault did not inflict *serious* bodily injury on Button, making Campbell ineligible for a sentencing enhancement under USSG § 2A2.2.[2] The district court then sentenced Campbell under the Sentencing Guideline for "Obstructing or Impeding Officers," which carries a base offense level of 6, and applied a three-level enhancement for conduct involving "physical contact." USSG § 2A2.4(b)(1). The resulting sentence was the ten-year maximum sentence authorized by § 111(b).

The district court further concluded that this offense constituted Campbell's third serious violent felony pursuant to § 3559, and sentenced him to life imprisonment. Campbell now appeals, maintaining that the district court erred in sentencing him.

## II.

We first consider whether infliction of bodily injury and use of a deadly or dangerous weapon in § 111(b) constitute sentencing factors or offense elements.

Section 111 provides in relevant part:

(a) *In general.* Whoever ... forcibly assaults, resists, opposes, impedes, intimidates or interferes with[any designated federal officer] while engaged in ... the performance of official duties ... shall, where the acts in violation of this section constitute only simple assault, be ... imprisoned *not more than* one year, ... and in all other cases, be

... imprisoned not more than three years....

(b) *Enhanced Penalty.* Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be ... imprisoned not more than ten years....

Thus, by its own terms, § 111 provides maximum penalties of (i) one year imprisonment for simple assault, or an assault not involving physical contact,[3] (ii) ten years imprisonment for assault involving use of a dangerous or deadly weapon or infliction of bodily injury, and (iii) three years imprisonment for all other assaults. *See United States v. Ramirez*, 233 F.3d 318, 321–22 (5th Cir.2000); *United States v. Chestaro*, 197 F.3d 600, 606 (2nd Cir. 1999).

Two years ago, in *Jones v. United States*, 526 U.S. 227, 229, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Supreme Court held that "serious bodily injury" constituted an offense element under the federal carjacking statute, 18 U.S.C. § 2119 (1988 ed. Supp. V). Like § 111, the carjacking statute at issue in *Jones* contained subsections, which increased a defendant's penalty in proportion to the aggravated nature of the crime. *See* 18 U.S.C. § 2119(1)-(3). Under subsection 2119(1), the offense of simple carjacking carried a maximum sentence of 15 years;

---

**2.** The government sought to have Campbell sentenced under the guideline for "Aggravated Assault," USSG § 2A2.2, which carries a base offense level of 15. "Aggravated assault," by definition, however, requires a finding of either use of a dangerous weapon or infliction of *serious* bodily injury. *See* USSG § 2A2.2, comment. (n. 1) (emphasis added). The district court found that neither of those elements were present in this case.

**3.** *See United States v. Duran*, 96 F.3d 1495, 1511 (D.C.Cir.1996) (defining simple assault as the form of assault involving an attempt to put another in fear of imminent serious bodily injury by "physical menace"); *see also United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir.1999) ("simple assault," as used in § 111(a), incorporates common-law definition of that term).

under subsection 2119(2), carjacking resulting in "serious bodily injury" carried a maximum sentence of 25 years; and under subsection 2119(3), carjacking resulting in death yielded a sentence of up to life imprisonment.

The *Jones* Court acknowledged that the "look" of the carjacking statute suggested that it established a single offense with various sentencing factors, including "serious bodily injury," but it determined that closer analysis belied that conclusion. *Jones*, 526 U.S. at 233, 119 S.Ct. 1215. The Court pointed out that, with the exception of subsection (1), § 2119's other subsections "provide[d] for steeply higher penalties" and conditioned those penalties "on further facts," such as serious bodily injury "that seem quite as important as the elements in the principal paragraph." *Id.*

The *Jones* Court then examined federal and state legislative practice, noting that "statutory drafting occurs against a backdrop ... of traditional treatment of certain categories of important facts, like the degree of injury to victims of crime, in relation to particular crimes." *Id.* at 234, 119 S.Ct. 1215. Finding that Congress modeled the federal carjacking statute on various robbery statutes, many of which define "serious bodily injury" as an offense element, the Court concluded that "carjacking is a type of robbery, and serious bodily injury has traditionally been treated ... as defining an element of the offense of aggravated robbery." *Id.* at 235, 119 S.Ct. 1215. To further support its conclusion, the Court cited various state robbery laws under which serious bodily injury or harm constituted an element of aggravated robbery. *See id.* at 236–37, 119 S.Ct. 1215 (collecting statutes).

Finally, the *Jones* Court expressed concern that defining "serious bodily injury" as a sentencing factor would adversely affect a defendant's constitutional rights. For, the Court posited, if "serious bodily injury" were deemed to be a sentencing factor, then "death" would also have to be treated as such. *Id.* at 243, 119 S.Ct. 1215. If death were a sentencing factor, then "a potential penalty might rise from 15 years to life on a nonjury determination." *Id.* at 243–44, 119 S.Ct. 1215. This "relative diminution of the jury's significance," the Court concluded, "would merit Sixth Amendment concern." *Id* at 248, 119 S.Ct. 1215. Relying on the rule that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter," the Court held "serious bodily injury" to be an element of the offense of aggravated carjacking. *Id.* at 239, 119 S.Ct. 1215 (citing *United States ex rel. Attorney General v. Del. & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909), and *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916)).[4]

A few months later, in *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), the Court followed a slightly different methodology to hold that use of a machine gun in 18 U.S.C. § 924(c) (1988 ed. Supp. V) also stated an element of a separate offense. Although as in *Jones*, the language and structure of the statute, and arguably its legislative history, "suggest[ed] a contrary interpretation," *Castillo*, 530 U.S. at 125, 120 S.Ct. 2090,

---

4. Additionally, the Court in *Jones* looked to the statute's legislative history. It noted that while certain congressional reports spoke of "serious bodily injury" as a "penalty factor," that history also contained "contrary indications," and, in any event, provided no basis for ignoring the other factors set forth above. *Jones*, 526 U.S. at 238, 119 S.Ct. 1215.

the Court held that use of a machine gun constituted an offense element (i) because it had not traditionally been used as a sentencing factor, *id.* at 126–27, 120 S.Ct. 2090, (ii) because asking a jury, rather than a judge, to determine this fact "would rarely complicate a trial or risk unfairness," *id.* at 127, 120 S.Ct. 2090, and (iii) because of the "length and severity of the added mandatory sentence"—an increase from five to thirty years. *Id.* at 131, 120 S.Ct. 2090. As to this last element—the length of the added mandatory sentence if the defendant was found to have used a machine gun—the Court stated that "if after considering traditional interpretive factors, we were left genuinely uncertain as to Congress' intent in this regard, we would assume a preference for traditional jury determination of so important a factual matter." *Id.*

Most recently, in *Apprendi v. New Jersey,* 530 U.S. 466, 476, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Supreme Court confirmed that the possible constitutional problem that it had identified in *Jones* was a reality. The *Apprendi* Court, without undertaking the detailed *Jones* or *Castillo* analysis as to whether a fact constituted an offense element or sentencing factor, simply held that "[o]ther than the fact of a prior conviction, *any fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). Although the Court in *Apprendi* did not totally eschew the *Jones* or *Castillo* analysis, it did indicate that in those instances in which a fact increased the maximum statutory penalty, "the elusive distinction between 'elements' and 'sentencing factors' "

was unimportant. *Id.* at 494, 120 S.Ct. 2348 ("[T]he relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"). *See also id.* at 501, 120 S.Ct. 2348 (Thomas, J. concurring)("[I]f the legislature, rather than creating grades of crimes, has provided for setting the punishment of a crime based on some fact ... that fact is also an element. No multi-factor parsing of statutes, of the sort that we have attempted since *McMillian* is necessary.") [5]

■ Whether guided by the *Apprendi* rule or the *Jones* or *Castillo* analysis, we can only conclude that infliction of bodily injury or use of a dangerous or deadly weapon as used in § 111(b) are offense elements. In other words, in § 111(b), Congress created a separate offense from those set forth in § 111(a). Whereas § 111(a) carries a maximum penalty of three years imprisonment, the offense described in § 111(b) carries a maximum penalty of ten years imprisonment. To expose a defendant to this ten-year maximum penalty, the government must charge and prove beyond a reasonable doubt at least one of the two additional elements that defines this separate offense, specifically (1) infliction of bodily injury or (2) use of a dangerous or deadly weapon.

First, *Apprendi* compels this conclusion, because the fact of infliction of bodily injury or use of a dangerous weapon in § 111(b) "increases the penalty for [the] crime" of assault on a federal officer "beyond the prescribed statutory maximum" of three years to up to ten years. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; 18 U.S.C. § 111. *See also United States v. Promise,* 255 F.3d 150, 153 (4th Cir.2001)

---

**5.** The *Apprendi* Court clarified that when a fact affects a sentence within the allowable statutory range, the distinction between element and sentencing factor retains significance. *See Apprendi,* 530 U.S. at 494 n. 19, 120 S.Ct. 2348.

(en banc) (holding that *Apprendi* requires that drug quantity be treated as an offense element in the context of 21 U.S.C. § 841 (1994)). In other words, infliction of bodily injury and use of a dangerous weapon are exactly the kind of facts which, under the *Apprendi* rule, must be charged in the indictment and submitted to the jury. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.

But even if *Apprendi* did not require the government to charge and prove these facts because of the possibility of exposing the defendant to a penalty greater than the statutory maximum, we would nonetheless conclude that these facts constitute elements of the offense of assault on a federal officer, as defined in § 111(b), not mere sentencing factors.

■ We acknowledge that the "look" of § 111 suggests that the additional elements described in § 111(b) are sentencing factors, not offense elements. Indeed, § 111(b) is set off and separately titled "Enhanced Penalty" in bold print. *See* 18 U.S.C. § 111(b); *United States v. Segien*, 114 F.3d 1014, 1018 (10th Cir.1997). However, *Jones* and *Castillo* teach that this type of language, and a statute's resulting "look" are not dispositive. *See Chestaro*, 197 F.3d at 607. Where, as here, other factors persuasively indicate that Congress' intent was to create separate offense elements, a court should not rely on "[t]he title alone" in determining whether a portion of a statute lists a penalty enhancement or offense element. *Castillo*, 530 U.S. at 125, 120 S.Ct. 2090; *see also Jones*, 526 U.S. at 232–33, 119 S.Ct. 1215.

As in *Castillo* and *Jones*, in this case other factors compel the conclusion that Congress intended to create a separate offense. Like the statutes at issue in *Castillo* and *Jones*, § 111(b) "provide[s] for steeply higher penalties," which are "condition[ed] on further facts ... that seem quite as important as the elements" of the

principal crime found in § 111(a). *Jones*, 526 U.S. at 233, 119 S.Ct. 1215; *see also Castillo*, 530 U.S. at 131, 120 S.Ct. 2090. A defendant who commits an assault defined in § 111(a) may have his prison sentence increased more than threefold if his crime involves the additional crucial facts of use of a deadly weapon or infliction of bodily injury. *See* 18 U.S.C. § 111(b) (carrying a maximum sentence of 10 years imprisonment); *Chestaro*, 197 F.3d at 607–08 (citing *Jones*, 526 U.S. at 233, 119 S.Ct. 1215).

Moreover, the facts on which these increased penalties are based, namely infliction of bodily injury or use of a dangerous weapon, are, as in *Castillo* and *Jones*, "of the type that the states and federal government traditionally have considered elements of an offense rather than sentencing factors." *Chestaro*, 197 F.3d at 608. For example, in the context of 18 U.S.C. § 113, the general federal assault statute, "serious bodily injury" has been held to be an element of the offense of aggravated assault. *See United States v. Fitzgerald*, 882 F.2d 397, 399 & n. 2 (9th Cir.1989) (finding an indictment sufficient for mentioning "serious bodily injury").

State laws too traditionally treat infliction of bodily injury (or great bodily injury) as an offense element, as opposed to a sentencing factor. *See, e.g., United States v. Davis*, 184 F.3d 366, 368 (4th Cir.1999) (interpreting S.C.Code § 56–5–750(C)(1)); *State v. Casanova*, 255 Conn. 581, 767 A.2d 1189, 1197 (2001) (infliction of physical injury on peace officer is element of assault under Conn. Gen.Stat. Ann. § 53a–167c(a)(1)); *State v. Parolin*, 339 N.J.Super. 10, 770 A.2d 1204, 1207–08 (2001) (serious bodily injury is essential statutory element of aggravated assault pursuant to N.J. Stat. Ann. § 2C:12–1b); *People v. Covington*, 19 P.3d 15, 19 (Co.2001) (serious bodily injury is element of second de-

gree assault pursuant to Co.Rev.Stat. § 18–3–203(1)(d)).

Use of a dangerous weapon, such as a firearm, also typically constitutes an element of an offense. *See, e.g., Dillard v. Roe*, 244 F.3d 758, 772–73 (9th Cir.2001) (fact that defendant "personally used a firearm" in inflicting corporal injury on cohabitant was an element rather than a sentencing factor and thus had to be found by the jury beyond a reasonable doubt); *Gonzalez v. State*, 585 So.2d 932, 933 (Fla. 1991) (use of a firearm is an essential element of third degree felony murder).

Most importantly, however, failure to define bodily injury or use of a dangerous weapon as separate offense elements would deprive Campbell of his "Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, [which] taken together entitle a criminal defendant to a jury determination that he is guilty of every element with which he is charged beyond a reasonable doubt." *Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348; *see also Jones*, 526 U.S. at 239–48, 119 S.Ct. 1215. Accordingly, we hold that bodily injury or use of a deadly or dangerous weapon are essential elements of the offense of assault on a federal officer in violation of § 111(b).[6] As such, they must be charged in the indictment and proved to a jury beyond a reasonable doubt.

**6.** We note that two of our sister circuits have recently reached the same conclusion. *See Chestaro*, 197 F.3d at 608; *United States v. Nunez*, 180 F.3d 227, 233 (5th Cir.1999). Prior to *Jones*, two other courts held that § 111(b) stated sentencing enhancements. *See United States v. Segien*, 114 F.3d 1014 (10th Cir.1997); *United States v. Young*, 936 F.2d 1050 (9th Cir.1991). Since *Jones*, no court has so held.

**7.** Campbell does not challenge his conviction under § 111(a), only the sentence illegally im-

### III.

Having concluded that bodily injury and use of a dangerous weapon in § 111(b) are offense elements, we now turn to the question of whether Campbell's sentence can stand. We conclude that it cannot.

### A.

The indictment in this case alleged the use of a dangerous weapon, but failed to allege infliction of bodily injury, nor was the element of bodily injury submitted to the jury. The jury found Campbell guilty of assault under § 111(a), but acquitted him of assault with a dangerous weapon under § 111(b).[7] Nonetheless, the district court made a finding at the sentencing hearing that Campbell inflicted bodily injury on Button, and sentenced him to ten years under § 111(b), which is seven years more than is permitted under § 111(a)'s three-year statutory maximum. Based on this, Campbell contends that the sentence imposed on him by the district court runs afoul of *Apprendi*.

Because Campbell failed to raise his *Apprendi* argument before the district court, we review for plain error only. *See* Fed. R.Crim.P. 52(b); *United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "Rule 52(b) contains three elements that must be established before we possess the authority to notice an error not preserved by a timely objec-

posed under § 111(b). He makes no claim that the indictment, which only charged assault on a federal officer by means of a dangerous weapon, failed to charge assault on a federal officer without use of a dangerous weapon, or that the district court amended the indictment by instructing the jury that it could find him guilty of assault, even if it found that he had not used a dangerous weapon. Accordingly, we do not address this issue.

tion: The asserted defect in the trial proceedings must, in fact, be error; the error must be plain; and, it must affect the substantial rights of the defendant." *United States v. Cedelle,* 89 F.3d 181, 184 (4th Cir.1996)(citing *Olano,* 507 U.S. at 731–32, 113 S.Ct. 1770). Even when all three elements are present, we may decline to notice an error if it does not " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

Recently, this court, sitting en banc, considered, in the context of 21 U.S.C. § 841, whether the failure to charge drug quantity in the indictment and submit the quantity issue to the jury required that we vacate the sentence and remand for resentencing under *Apprendi. See Promise,* 255 F.3d 150, 153. The court was sharply divided and the decision contained five separate opinions. While a majority of the judges voted to affirm Promise's conviction, they did so on differing grounds.

Judge Wilkins announced the judgment of the court. In his opinion, Judge Wilkins concluded that *Apprendi* mandated that drug quantity be treated as an element of an aggravated drug offense under § 841, and that the failure to charge this offense element in the indictment and submit this issue to the jury constituted plain error. *See id.* at 160. Judge Wilkins also concluded that the error affected a defendant's substantial rights when the defendant's sentence for conspiring to distribute a controlled substance exceeded the twenty-year statutory maximum in 21 U.S.C. § 841(b)(1)(C). *See id.* A majority of the court, made up of Judges Widener, Williams, Michael, Motz, Traxler and King, joined these parts of Judge Wilkins's opinion.

A different majority of the court voted nonetheless to affirm the defendant's conviction. Four judges, Chief Judge Wilkinson, and Judges Niemeyer, Luttig and Gregory, writing in three separate opinions, affirmed on the ground that, in the context of § 841, drug quantity was properly viewed as a sentencing factor, and not an offense element that needed to be charged in the indictment or submitted to the jury, and therefore the maximum sentence permitted by the statute was life imprisonment.

Judges Wilkins, Williams and Traxler also voted to affirm Promise's conviction, although on a different basis. These three members of the court agreed that the failure to treat drug quantity as an offense element in § 841 constituted plain error affecting the defendant's substantial rights. They nonetheless voted to affirm the conviction, concluding—on the basis of "a balancing of numerous considerations," including the strength of the government's evidence and the fact that a pre-trial notice of drug quantity was provided to the defendant—that the error should not be corrected, *id.* at 163 n. 9; Chief Judge Wilkinson joined this portion of their opinion on the ground that, assuming arguendo "there was an error in the proceedings below," it did not merit reversal under *Olano. Id.* at 163. These judges did not address precisely how they weighed these considerations, or which consideration was dispositive. *See id.* at 192 n. 3 (Motz, J., concurring in part and dissenting in part). However, they repeatedly characterized the pretrial notice as "critical," *id.* at 163 & n. 9, and did not respond to the dissent's suggestion that, in light of this emphasis, absent such pretrial notice, "even overwhelming and uncontroverted evidence of a defendant's guilt" would be an "insufficient" basis "*not* to notice" such an error. *Id.* at 192 n. 3 (Motz, J., concurring in part

and dissenting in part). Given this, we believe that such notice is indeed critical to these judges' decision as to whether to correct the error.

Four members of the court, Judges Widener, Michael, King and myself, dissented from the judgment in *Promise*, concluding that this court would abuse its discretion in failing to notice and correct the plain error regardless of the strength of the prosecution's evidence or whether pre-trial notice was provided to the defendant, and so voted to vacate the defendant's illegal sentence and remand for resentencing. *See id.* at 189 (Motz, J., concurring in part and dissenting in part). Moreover, in an opinion concurring in the judgment, two other members of the court similarly indicated their view that if drug quantity were an element (and they did not believe it was), failure to charge it constituted plain error that had to be corrected. *See id.* at 167 (Niemeyer, J., concurring in the judgment, joined by Gregory, J.).

 Applying *Promise* here, it is clear that imposition of a ten-year sentence on Campbell for an offense element—infliction of bodily injury—that was neither charged in the indictment nor proved to the jury constitutes plain error. In *Promise*, a majority of this court held that *Apprendi* mandates this result. Moreover, this error affects Campbell's substantial rights, just as a majority of this court held that a similar error affected Promise's substantial rights, because it exposes him to a term of imprisonment greater (here more than three times greater) than the statutory maximum for the crime of which he was

convicted, namely assault on a federal officer under § 111(a). The only remaining issue, then, is whether we should exercise our discretion to correct the error.

No matter what view is taken as to the proper approach to this ultimate question, i.e., whether pre-trial notice and the strength of the government's evidence have any place in determining whether to correct this plain error, in this case the result is the same—the plain error must be corrected. First, under the approach and for the reasons articulated by the four dissenters in *Promise*, the error must be corrected because, regardless of any pre-trial notice or strong government evidence, "sentencing a man for a crime for which he was neither charged nor convicted affects the fairness, integrity and public reputation of judicial proceedings." *Id.* at 192 (Motz, J., concurring in part and dissenting in part). *See also id.* at 167 (Niemeyer, J., concurring, joined by Gregory, J.). Moreover, if a pretrial notice is indeed of "critical" import, as other members of the *Promise* court believed, *id.* at 167 & n. 9, the plain error in this case must be corrected because the government provided *no* pretrial notice informing Campbell that he could be held accountable for infliction of bodily injury.[8] Thus, that factor, which was "critical" to the decision of the members of the majority that declined to recognize the error in *Promise*, is absent here.

In sum, under either approach, we must conclude that the plain error affecting Campbell's substantial rights—failure to charge in the indictment an essential ele-

---

**8.** This lack of notice is no small matter. The allegations in the indictment alerted Campbell that the government sought to prove that he used a dangerous weapon—specifically pepper spray—in assaulting Officer Button and that if the government succeeded in proving this, he could receive a sentence of up to ten years. With such notice, Campbell was able

to mount a defense to this charge and managed to convince the jury that pepper spray did not constitute a dangerous weapon within the meaning of § 111(b). Having no notice that the government would seek to charge him with infliction of bodily injury, however, Campbell had no reason to present evidence to the jury controverting such a charge.

ment of the offense of assault on a federal officer under § 111(b) (infliction of bodily injury)—" 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *Olano,* 507 U.S. at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Accordingly, we exercise our discretion to notice this error, and vacate the § 111(b) sentence and remand for resentencing under § 111(a).

### B.

Campbell received a total sentence of life imprisonment in this case because the district court found that his § 111(b) conviction was a third strike under the federal "three strikes" law, 18 U.S.C. § 3559(c). In relevant part, § 3559(c) mandates a life sentence for any third conviction punishable by ten or more years imprisonment and involving an element of "use, attempted use, or threatened use of physical force." 18 U.S.C. § 3559(c)(2)(F). Because we have determined that Campbell was convicted only of assault on a federal officer under § 111(a), which carries a maximum penalty of three years, and that Campbell's ten-year sentence under § 111(b) was in error, this conviction cannot serve as a "third strike" for the purposes of § 3559(c). Accordingly, we also vacate Campbell's life sentence under that statute.

### IV.

For the reasons set forth above, we vacate Campbell's sentences under 18 U.S.C. § 111(b) and 18 U.S.C. § 3559(c) and remand for resentencing under 18 U.S.C. § 111(a) to a sentence not exceeding three years imprisonment.

*VACATED AND REMANDED.*