UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-4912

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHARLIE WAYNE BRYANT,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:11-cr-00072-MOC-1)

Argued:  October 29, 2013          Decided:  January 14, 2014

Before KEENAN, WYNN, and THACKER, Circuit Judges.

Affirmed in part; vacated and remanded in part by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Keenan and Judge Thacker joined.

**ARGUED:** Cindy Helene Popkin-Bradley, CINDY H. POPKIN-BRADLEY ATTORNEY AT LAW, Raleigh, North Carolina, for Appellant. William Michael Miller, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee**. ON BRIEF:** Anne M. Tompkins, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Charlie Wayne Bryant pled guilty to assault on a federal officer or employee, in violation of 18 U.S.C. § 111(a)(1) and (b). The charge arose from an altercation between Defendant and a security officer at the Social Security Administration ("SSA") building in Gastonia, North Carolina. After denying Bryant's motion to withdraw his guilty plea, the district court applied United States Sentencing Guidelines ("U.S.S.G.") § 2A2.2 and sentenced Defendant to a 130-month sentence, which was within the Guidelines range.

On appeal, Defendant challenges both the validity of his guilty plea and his sentence. First, Defendant argues that the district court abused its discretion by denying his motion to withdraw his guilty plea, which he contends lacked a factual basis and was not knowing and voluntary. Second, Defendant argues that the district court used the incorrect Guidelines provision to calculate his sentence. For the reasons discussed below, we affirm Defendant's guilty plea. However, we are unable to conclude that the district court applied the proper sentencing guideline. We therefore vacate Defendant's sentence and remand for resentencing.

2

I.

A.

In February 2011, Defendant was a forty-five-year-old homeless man with a long criminal record and a history of chronic mental illness. Late on February 7, 2011, or early on February 8, 2011, Defendant had the Gaston Emergency Medical Services take him to King's Mountain Hospital in Gaston County, North Carolina. He told the examining physician that he felt like he was "becoming bipolar" and that he had not been able to obtain an appointment with his regular doctor. J.A. 279. The examining physician diagnosed Defendant with "Anxiety" and concluded that Defendant was "appropriate for outpatient management." The hospital discharged Defendant at 4:13 a.m.

Later that day, Defendant made his way to the SSA office to inquire about his Social Security benefits. The claims representative who assisted Defendant said that Defendant was "constantly talking" but making "mostly irrelevant" statements that "did not make much sense." J.A. 270. At times, Defendant became loud and disruptive, which prompted the security officer, Edward Seigle, to approach Defendant and ask him to lower his voice. Eventually, Defendant found himself "in a scuffle" with Seigle. J.A. 157.

Although the eyewitnesses disagree over exactly how this "scuffle" started, the witnesses agree that Defendant and Seigle

3

ended up on the floor of the public restroom with Seigle struggling to control Defendant, who was thrashing wildly. It was not until two additional SSA employees, Brandon Vallier and Hubert Davidson, intervened that the three men were able to subdue and handcuff Defendant. A short time later, the Gastonia Police Department arrived and took custody of Defendant. While the police were removing him from the SSA office, Defendant said to Seigle, "I will catch you on the street." During the struggle Seigle sustained a cut on his lip that required one stitch.

## B.

On December 8, 2011, Defendant pled guilty without a plea agreement to a one-count indictment charging him with violation of 18 U.S.C. § 111(a)(1) and (b). The indictment read as follows:

> Charlie Wayne Bryant did forcibly assault, resist, oppose, impede, intimidate, and interfere with [Seigle] while [Seigle] was engaged in, and on account of the performance of [Seigle's] official duties, and in the commission of the offense, did make physical contact with the victim, . . . inflicting bodily injury, in violation of Title 18, United States Code, Section 111(a)(1) and (b).

J.A. 10. The government explained that the "charge is one violation of Title 18, United States Code, Section 111(a)(1) and (b)" and that "(b), Your Honor, is an alleged enhancement that

4

the defendant inflicted bodily injury on to the victim." J.A. 14. During the plea colloquy, the magistrate judge asked Defendant a series of questions, including whether Defendant understood that the maximum penalty, if convicted, was "20 years' imprisonment and/or a $250,000 fine." J.A. 14. The magistrate judge also asked Defendant the following questions:

> Do you understand that the district judge will not be able to determine the applicable sentencing guideline range until after your presentence report has been prepared and you've had an opportunity to comment on it?
> . . . .
> Do you also understand that in some circumstances you may receive a sentence that's different, that is, either higher or lower than that called for by the guidelines?
> . . . .
> Do you understand that if the sentence is more severe than you expected or the court does not accept the government's sentencing recommendation, you'll still be bound by your plea and you'll have no right to withdraw it?

J.A. 15. Defendant answered "Yes, sir" to all of the questions. The magistrate judge accepted Defendant's guilty plea after finding that the plea was knowingly and voluntarily made.

Several months later, Defendant moved to withdraw his guilty plea on the grounds that (1) the plea was not knowing and voluntary because the district court failed to consider a competency report and order a competency hearing before accepting the plea; and (2) Defendant was legally innocent due

5

to insanity. The district court found that a formal hearing was not required because a competency report had found Defendant competent to stand trial. The district court also found that Defendant had no meritorious defenses, an issue fully addressed at the plea hearing. Accordingly, the district court denied Defendant's motion to withdraw his guilty plea.

Before sentencing, the probation office prepared a presentence investigation report ("PSR") that computed a total offense level of 28, a criminal history category of VI, and a Guidelines range of 140–175 months' imprisonment. The PSR described the charged offense as a violation of 18 U.S.C. § 111(a)(1) and (b) "by Use of a Deadly Weapon." J.A. 238. Defendant's base offense level of 14 was derived by applying U.S.S.G. § 2A2.2. Under the enhancements in U.S.S.G. § 2A2.2, the PSR added 3 levels for the threatened use of the officer's firearm, 3 levels for bodily injury, and 2 levels for a conviction under 18 U.S.C. § 111(b). The PSR also added 6 levels under U.S.S.G. § 3A1.2 because the victim was a government officer and because the offense of conviction was motivated by the victim's status.

Defendant objected to several aspects of the PSR and argued that U.S.S.G. § 2A2.3 should apply, along with a 2-level enhancement for causing bodily injury. He argued that he should receive a 2-level decrease for acceptance of responsibility,

6

resulting in a total offense level of 7. Defendant also objected to certain factual characterizations in the PSR, the most important of which was his argument that he never touched or controlled Seigle's firearm. The government responded by arguing that Defendant was not entitled to a reduction for acceptance of responsibility and by noting that Defendant's suggested alternate Guideline (U.S.S.G. § 2A2.3) does not apply to the charged violation of 18 U.S.C. § 111(a)(1) and (b). The government stated that "[t]he proper guideline is § 2A2.2, as applied in the draft PSR[,]" but did not point out U.S.S.G. § 2A2.4 as an alternate. J.A. 231.

On October 26, 2012, the district court conducted the sentencing hearing and received testimony from Defendant, Seigle, and four SSA employees who witnessed the events at issue. Defendant testified that he merely touched Seigle's firearm holster in an attempt "to scare him to get off of me." J.A. 158. But this testimony conflicted with the testimony of Davidson, Vallier, and Seigle, who all testified that Defendant attempted to gain control of Seigle's firearm. Defendant's testimony also differed from the testimony of Special Agent Eric Long, who had interviewed Defendant on behalf of the Federal Protective Service on February 11, 2011.

In his testimony, Long recounted how Defendant told him and another agent that he was, in fact, reaching for Seigle's weapon

7

while they were fighting.  According to Long, Defendant stated during the interview that "I was trying to grab his Glock" and that "[m]y intentions were to kill him because he was beating me."  J.A. 147.  Defendant testified that he never said this to Long, and in any event in his "Motion for Reasons of Appeal," Defendant explained that little weight should be given to anything he might have said during that interview because he was off his medicine and his "mind was racing manic" at the time. J.A. 202.

After the conclusion of the testimony, and following arguments from both sides regarding Defendant's acceptance of responsibility and the applicability of Section 111(b), the district court granted a two-level reduction for acceptance of responsibility, found that Guideline level 26 applied, and sentenced Defendant to a within-guideline sentence of 130 months.  The district court did not explicitly rule on Defendant's objections to the PSR but stated that "all of the findings in the Presentence Report are accepted by the Court with the exception of taking away . . . the acceptance of responsibility."  J.A. 167.  The district court discussed the appropriateness of the 130-month sentence, explaining that even if a higher guideline had applied, it would have granted Defendant a downward variance to impose a 130-month sentence.

The district court made several statements that are in tension with its adoption of the PSR's findings and its application of U.S.S.G. § 2A2.2. During a conversation before Defendant was present in the courtroom, the government stated that Section 111(b) was applicable "on the theory that [Seigle] did receive a bodily injury." J.A. 72. The district court responded that "I don't know that that's an assault[,]" and later noted that "this is a huge sentence that this guy gets for a busted lip." J.A. 73–74. Following the receipt of the testimony, the district court also stated that "there's a factual basis to show that the defendant did forcibly assault[,] impede, intimidate[,] and interfere with the officer while he was carrying out his duty, and there was some bodily injury, although not much, . . . ." J.A. 164. The district court later noted that the offense took place "with no weapon involved by the defendant." J.A. 168. Defendant argues that these statements undermine the district court's adoption of the findings in the PSR, and thus, the applicability of U.S.S.G. § 2A2.2. Defendant asserts that the facts found by the district court are insufficient to support either basis for applying Section 2A2.2: serious bodily injury or involvement of a dangerous weapon. Defendant further argues that he should have been sentenced under U.S.S.G. § 2A2.4.

With his first argument on appeal, Defendant contends that the district court erred in denying his motion to withdraw his guilty plea. Defendant argues that his plea was not knowingly and voluntarily entered and lacks a factual basis. We disagree.

A.

We review the denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Ubakanma, 215 F.3d 421, 424 (4th Cir. 2000). Rule 11(d) of the Federal Rules of Criminal Procedure affords defendants no absolute right to withdraw an accepted guilty plea. See United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). "If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." United States v. Lambley, 974 F.2d 1389, 1394 (4th Cir. 1992). After the court has accepted the plea and before the court has imposed a sentence, "the defendant has the burden of showing a fair and just reason for withdrawal." Ubakanma, 215 F.3d at 424; Fed. R. Crim. P. 11(d).

A fair and just reason "'essentially challenges' the fairness" of the Rule 11 proceedings. Ubakanma, 215 F.3d at 424 (quoting United States v. Puckett, 61 F.3d 1092, 1099 (4th Cir. 1995)). To assist in this determination of fairness, the Fourth

Circuit has developed a nonexclusive list of factors to consider:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

Moore, 931 F.2d at 248. "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." United States v. Bowman, 348 F.3d 408, 414 (4th Cir. 2003). We analyze "the sufficiency of the colloquy under the harmless error standard." United States v. Nicholson, 676 F.3d 376, 382 (4th Cir. 2012).

Under Rule 11(b)(1), the defendant must be addressed in open court and be informed of many things, including the following: the nature of the charge; any potential penalties, including mandatory minimum and maximum sentences; the applicability of the Sentencing Guidelines, including potential departures from the Guidelines and the 18 U.S.C. § 3553(a) sentencing factors; the court's obligation to impose a special assessment; the defendant's right to an attorney; his right to

11

plead not guilty and be tried by a jury with the assistance of counsel; his right to confront and cross-examine witnesses; his right against self-incrimination; and his right to testify, present evidence, and compel the attendance of witnesses. He must also be informed that a guilty plea waives any further trial and that his answers at the proceeding may be used against him in a prosecution for perjury. Rule 11(b)(2) requires the court to determine that the plea is voluntary, and Rule 11(b)(3) requires the court to determine the factual basis for the plea.

The district court may defer its determination that there is a factual basis until the sentencing hearing. United States v. Martinez, 277 F.3d 517, 522 n.4 (4th Cir. 2002). In making its determination that a factual basis exists, the district court is not limited to the Rule 11 colloquy. Rather, the court "may conclude that a factual basis exists from anything that appears on the record." United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991). We review the district court's determination that there was a factual basis for abuse of discretion. United States v. Mastrapa, 509 F.3d 652, 660 (4th Cir. 2007).

B.

In this case, Defendant first argues that his guilty plea was not knowing and voluntary because the "District Court did not inquire as to [the] mental health of a mentally ill

12

defendant." Appellant's Br. at 18. Although it is undisputed that Defendant suffers from a variety of mental illnesses, nothing in the record indicates that his illnesses had any impact on his competence or his ability to understand the nature of the proceedings against him. The magistrate judge conducted a plea hearing that covered all aspects required by Rule 11. In response to the magistrate judge's question about whether Defendant was under the influence of alcohol or drugs, defense counsel stated "just for the record, it doesn't affect his ability to understand today's proceedings, but he does take a thousand milligrams of Depakote . . . twice a day at the jail." J.A. 13. The magistrate judge then asked, "Is your mind clear and do you understand that you are here to enter a guilty plea that cannot later be withdrawn?" Defendant answered, "Yes, sir." J.A. 13.

Defendant further argues that he should have received a competency hearing prior to the acceptance of his guilty plea. But Defendant does not argue that he was actually incompetent to stand trial. In fact, we find Defendant's own appellate brief persuasive on this point. It states, unequivocally, that "Mr. Bryant is competent to stand trial." Appellant's Br. at 22. Rather, Defendant argues that if the court had held a competency hearing, "the facts of the crime would have certainly come out and [Defendant] would have been sure about the facts that he

13

faced." Appellant's Br. at 23. Such an argument fundamentally misunderstands the purpose of a mental competency determination under 18 U.S.C. § 4241. That statute is designed to ensure that a defendant is able "to understand the nature and consequences of the proceedings against him [and] to assist properly in his defense." 18 U.S.C. § 4241(a). It is not a fact-finding tool.

Defendant makes much of the fact that his guilty plea was accepted before the court reviewed the competency report, which the district court had ordered. Both parties received a copy of the report in advance of the Rule 11 hearing. Neither party requested a competency hearing. Most importantly, the psychological evaluation that the district court ordered found Defendant to be competent to stand trial. To the extent that any error occurred, it was harmless.

C.

Defendant next argues that his guilty plea lacked a factual basis. Defendant's argument seems to be that Defendant would not have pled guilty if he had first heard the government's version of the facts. We reject this argument for several reasons.

First, nothing in the record suggests that Defendant did not have access to the government's evidence in the case. Second, Defendant concedes that during the plea colloquy, the magistrate judge "did inform" him that the district court "would

14

find a factual basis at a later date." Appellant's Br. at 24. Finally, Defendant's argument regarding the timing of finding a factual basis is contrary to the settled law in this Circuit.

According to Fed. R. Crim. P. 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." "Because judgment is not entered until after sentencing, a court may defer the finding of a factual basis for the plea until that time." Martinez, 277 F.3d at 522 n.4. As discussed herein, the district court conducted a hearing at which it received testimony from Defendant and several witnesses to the offense. This hearing and the finding of the factual basis for Defendant's guilty plea occurred prior to the district court's entry of judgment against Defendant. As such, the district court did not abuse its discretion in finding a factual basis.

III.

With his second argument on appeal, Defendant contends that the district court erred by applying U.S.S.G. § 2A2.2 instead of U.S.S.G. § 2A2.4. Defendant specifically argues that no factual basis exists to support a finding of serious bodily injury or the involvement of a dangerous or deadly weapon—either of which would suffice to sentence him under U.S.S.G. § 2A2.2 rather than under § 2A2.4. Although the facts of the case might support a

15

finding that a dangerous or deadly weapon was involved, we are not persuaded that the district court actually made such a finding.

A.

"We review a sentence for reasonableness, applying an abuse of discretion standard." United States v. Susi, 674 F.3d 278, 282 (4th Cir. 2012). We first "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the Section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." Gall v. United States, 552 U.S. 38, 51 (2007). Only after we determine that a sentence is free from significant procedural error do we reach the substantive reasonableness of a sentence. See id. This Court "review[s] the district court's legal conclusions de novo and its factual findings for clear error." United States v. Horton, 693 F.3d 463, 474 (4th Cir. 2012) (quoting United States v. Layton, 564, F.3d 330, 334 (4th Cir. 2009).

Title 18 U.S.C. § 111 makes it a crime to assault, resist, or impede government officers or employees. One who commits the prohibited acts by use of a "deadly or dangerous weapon," or who inflicts bodily injury, faces a statutory maximum penalty of 20

16

years imprisonment. 18 U.S.C. § 111(b). This Court has held that "infliction of bodily injury or use of a dangerous or deadly weapon as used in § 111(b) are offense elements." United States v. Campbell, 259 F.3d 293, 298 (4th Cir. 2001). Thus, to trigger the enhanced twenty-year statutory maximum under 18 U.S.C. § 111(b), the government "must charge and prove beyond a reasonable doubt at least one of the two additional elements that defines this separate offense, specifically (1) infliction of bodily injury or (2) use of a dangerous or deadly weapon." Id.

When more than one base offense level could apply to a particular offense, the sentencing court shall determine the guideline range by considering "all acts and omissions committed . . . during the commission of the offense of conviction [and] any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(1), (4). This is often referred to as "the Relevant Conduct Guideline," and it requires the sentencing court to determine a defendant's offense level based on a consideration of relevant conduct. See United States v. Hayes, 322 F.3d 792, 802 (4th Cir. 2003) ("[W]hile the guidelines preserve a broad range of discretion for district courts, a court has no discretion to disregard relevant conduct in order to achieve the sentence it considers appropriate.").

17

Defendants convicted of violating 18 U.S.C. § 111 are sentenced according to either U.S.S.G. § 2A2.2, which pertains to aggravated assault and carries a base offense level of 14, or U.S.S.G. § 2A2.4, which pertains to obstructing or impeding officers and carries a base offense level of 10. An aggravated assault is "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." U.S.S.G. § 2A2.2 cmt. n.1. The term "dangerous weapon" includes a firearm. U.S.S.G. § 1B1.1 cmt. n.1(D). "Serious bodily injury" is defined as injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L). "Bodily injury," on the other hand, "means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 app n.1(B).

The finding of a factual basis that is sufficient to support a plea under 18 U.S.C. § 111(b) can be insufficient to support a sentence for aggravated assault. Section 111(b) requires either the use of a dangerous weapon or the infliction of bodily injury; it does not require <u>serious</u> bodily injury.

18

But the Guidelines make clear that a sentence for aggravated assault requires the sentencing court to find the "presence of an aggravating factor" such as "the involvement of a dangerous weapon" or "serious bodily injury." U.S.S.G. § 2A2.2 cmt. background. Thus, a defendant who pleads guilty to the offense element of bodily injury under 18 U.S.C. § 111(b) has not necessarily admitted to facts that would support a finding during sentencing that he inflicted "serious bodily injury." We turn now to a discussion of the sentencing hearing.

B.

In this case, the government charged the additional offense element of infliction of bodily injury under 18 U.S.C. § 111(b). The government proved that element by virtue of Defendant's guilty plea following the properly conducted Rule 11 hearing. As discussed above, the sentencing court properly determined that a factual basis supported the plea of guilty. Moreover, the sentencing court properly used the Relevant Conduct Guideline to consider "all acts . . . committed . . . by the defendant" during the course of the altercation with Seigle. U.S.S.G. § 1B1.3(a)(1)(A).

However, two aspects of this case give us pause and leave us in doubt as to whether the district court intended to apply U.S.S.G. § 2A2.2 or U.S.S.G. § 2A2.4. First, the PSR's description of the charged offense differed from the indictment

19

to which Defendant pled guilty in an important respect: The indictment contained no reference to the use of a weapon, whereas the PSR lists the "Charge and Conviction" as assault "by Use of a Deadly Weapon." J.A. 238, 241. Put simply, Defendant did not plead guilty to using a deadly weapon.

The government charged and proved only the bodily injury element of Section 111(b).[1] But by mischaracterizing Defendant's conviction as assault "by Use of a Deadly Weapon," the PSR changed the element of Section 111(b) that the government proved. See Campbell, 259 F.3d at 300 ("[B]odily injury and use of a dangerous weapon in § 111(b) are offense elements . . . ."). To be sure, by pleading guilty to the bodily injury element, Defendant put himself at risk of receiving the maximum sentence of a 20-year prison term, a contingency of which he was made aware during his Rule 11 hearing. Thus, even though Defendant was not charged and convicted of using a deadly weapon, the sentencing court could nonetheless find that a dangerous weapon was involved in the offense of conviction and impose an appropriate sentence.[2] In fact, the sentencing court

---

[1] At the Rule 11 hearing, the government explained that § 111(b) applied because "the defendant inflicted bodily injury on to [sic] the victim." J.A. 14.

[2] A finding that Defendant inflicted serious bodily injury would also suffice to sentence Defendant under U.S.S.G. § 2A2.2. It seems clear from the record, however, that the government (Continued)

20

is obligated to consider relevant conduct "to achieve the sentence it considers appropriate." Hayes, 322 F.3d at 802. This brings us to our second concern.

Although the district court stated that "all of the findings in the Presentence Report are accepted," J.A. 167, the court made other statements that belie this finding.[3] For example, when the district court summarized the factual basis for the guilty plea, it stated that "there's a factual basis to show that [Defendant] did forcibly assault[,] impede, intimidate and interfere with the officer while he was carrying out his

---

never argued that Seigle's cut lip, which required a single stitch, was a serious bodily injury. Additionally, the district court noted that "there was some bodily injury, although not much." J.A. 164. Therefore, we are unable to sustain Defendant's sentence under the alternate ground of serious bodily injury in U.S.S.G. § 2A2.2.

[3] We note that Defendant filed two memoranda that raised sentencing issues. The first was titled "Defendant's Objection to Presentence Report," and it was filed on August 16, 2012. J.A. 222–25. The second was titled "Defendant's Position Concerning Sentencing," and it was filed on October 25, 2012, the day before the sentencing hearing. J.A. 260–264. The record contains no indication that the district court explicitly addressed either of these memoranda or ruled on the parts of the PSR that remained in dispute. See Fed. R. Crim. P. 32(i)(3)(B) ("[F]or any disputed portion of the presentence report . . . [the court must] rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]"). For the reasons stated below, we are unable to conclude that the district court implicitly ruled on those objections to the PSR that remained at the time of Defendant's sentencing.

duty, and there was some bodily injury, although not much[.]" J.A. 164. Standing alone, this would be unremarkable because the district court was merely reciting the terms of the indictment to which Defendant pled guilty. But, the district court later noted that the offense took place "with no weapon involved by the defendant." J.A. 168. This statement undermines the district court's acceptance of "all of the findings" in the PSR, in particular, those findings that pertain to the involvement of a dangerous weapon. If no dangerous weapon was involved, U.S.S.G. § 2A2.2 cannot apply.

This is not to say that the district court must apply U.S.S.G. § 2A2.4. To the contrary, the district court heard facts that might support its application of U.S.S.G. § 2A2.2 via the Relevant Conduct Guideline, U.S.S.G. § 1B1.3. For example, Seigle, Davidson, and Vallier all testified that Defendant was grabbing for Seigle's gun. Defendant himself admitted that he was attempting to scare Seigle by touching his holster. And Special Agent Long testified that Defendant told him that he was attempting to grab Seigle's "glock" and that if he had been successful, he would have killed Seigle.

We choose not to speculate what the district court might have intended in this case. Defendant's sentence would be vastly reduced if no weapon was involved and U.S.S.G. § 2A2.4, rather than U.S.S.G. § 2A2.2, applies. We therefore vacate

22

Defendant's sentence and remand to the district court for additional factual findings and resentencing. At a minimum, the PSR must be revised to incorporate the correct conviction.

IV.

For the foregoing reasons, we affirm the judgment of the district court as to the denial of Defendant's motion to withdraw his guilty plea. We vacate and remand for resentencing consistent with this opinion.

<u>AFFIRMED IN PART;</u>
<u>VACATED AND REMANDED IN PART</u>